## SUPREME COURT.

MULLIGAN agt. BROPHY.

STORY agt. LIPSEY AND OTHERS.

It is unsafe to admit parol agreements in relation to canceling judgments and settling suits to prevail in opposition to the oath of the adverse party, except under very special circumstances. The written evidence of what took place should be adhered to; and as a general rule *required*, of the settlement of a legal controversy.

The history of this case given, as illustrative that, notwithstanding the injunction of the Code requiring all pleadings to be drawn " in such a manner as to enable a person of common understanding to know what is intended," in a simple action claiming the *immediate* delivery of personal property, after nearly a four years' litigation, one of the parties was, on oath, compelled to admit that under the pleadings and proceedings, he was unable to understand " his true position."

Whether the several " *counsel* " engaged in the case, from time to time, were able to understand it, *quere*.

*Brooklyn Special Term, January* 1853. Motion to set aside judgments.

MR. ALLEN, *for Motions.*

S. B. BROPHY, *against Motions.*

BARCULO, Justice.—We are told by the illustrious author who immortalized the case of *Peebles vs. Plainstones,* that " as there has been about ten or dozen agents employed, and each took his own way, the case has come to that pass that Stair or Arniston could not mend it."

If the first of the above named suits has not reached the like fortunate state, when it can neither be mended " nor spoiled," it is not for the want of a similar reason. For the defendant states that the plaintiff · has had in his employ no less than twelve regular members of the bar, besides supernumeraries; and as the affidavit expresses it, " when one attorney failed in a motion, he usually employed a new attorney to renew the controversy in some other shape." This statement is rendered probable also by the plaintiff's deposition, which informs us " that a great num-

ber of motions have been made in this cause by or on behalf of the defendant, who is an attorney at law," while the plaintiff, being " a tailor by trade, and but very little acquainted with law or legal proceedings, has never been able until within a few days past of getting such information as would enable him to understand the real nature of such motions, or the true position in which deponent was placed thereby."

It may appear to the uninitiated somewhat extraordinary that this unfortunate tailor, who commenced his suit nearly four years ago, under a system of procedure which required all pleadings to be drawn " in such a manner as to enable a person of common understanding to know what is intended," should have been so long ignorant of " his true position;" but to those who have seen the workings of the new machinery, it is no novelty to find a case which, so far from being understood by clients, is somewhat unintelligible to counsel themselves.   Whether this is not a full excuse for the numerous highly respectable lawyers who have been concerned in this matter; and whether this plaintiff is not another legitimate victim of codification, may more fully appear by the details of the case.

I feel it my duty to state the proceedings at some length, as a striking illustration of what is constantly occurring around us; and in the sincere hope that they may suggest to those who hold the power, the propriety of relieving courts and suitors from the incubus that weighs upon them, by *repealing* that Code, which having been fully tested, has utterly failed.

The papers before me, containing not less than *two hundred and fifty* folios of manuscript, consisting of affidavits, pleadings and orders, show that the plaintiff in June 1849, commenced an action to recover a few articles of personal property, which the defendant had purchased at a sheriff's sale.   It would have been, under the Revised Statutes, a very simple action of replevin, and would have terminated in a judgment probably within ninety days.   But it appears that the plaintiff claimed the " immediate delivery of the goods " under the Code; and, they having been delivered, he asked in his complaint merely for *damages*.   The cause was brought to trial before Justice HURLBUT, at the Putnam circuit in October 1849, and the plaintiff recovered a ver-

Mulligan agt. Brophy.

dict for *ten dollars.* What next occurred does not very distinctly appear. The defendant states in his affidavit "that several motions were made in regard to this judgment, which were resisted." The result however was that in June 1850, the plaintiff entered up judgment for his damages and costs, and a delivery of the property. The defendant then moved to set aside the judgment. His motion was denied on the 6th of August by Judge Brown, and again denied by Judge McCoun in September, with leave in both instances to renew the same.

On the third attempt, an order was made at the Newburgh special term, before Justice Brown, in November 1850, striking out that part of the judgment roll relating to costs and a return of the property, and permitting the plaintiff to vacate his judgment and amend his complaint. In an evil hour the plaintiff availed himself of the privilege, and served an amended complaint, in which he claimed a delivery of the property and damages. To this the defendant answered, setting up his title and praying for a return of the goods to him. No reply was put in. Thus the case stood at the end of the campaign of 1850.

In April 1851, the defendant moved at the Putnam special term for judgment on the complaint and answer, and an affidavit showing that no reply had been made, and obtained an order "that the complaint be dismissed and that the defendant have judgment with costs to be adjusted." This order, having been obtained without opposition, did not afford the defendant the relief he sought. Application was accordingly made at the Orange special term in June following; upon which the order was amended by providing for a recovery of the value of the property, together with damages for its detention, and for a writ of inquiry, &c. The rest of the summer seems to have been spent in vain attempts to get the damages assessed. The sheriff of Putnam county after having submitted the case to two juries, who did not agree to a verdict, gave it up in despair; or, as the affidavit expresses it, "declined to act any further in the matter." This of course laid the foundation for more motions. Accordingly, at the November special term held in Westchester county, the defendant obtained an order substituting a reference instead of a writ of inquiry. The referee, however, after his

Mulligan agt. Brophy.

appointment, refused to act, and another was substituted by an order made before Justice MORSE at Brooklyn, in December 1851. This closed the third year of the litigation. It would appear, however, that the plaintiff had given up the contest early in the season, as the various unproductive orders above named were obtained without opposition.

In 1852 he appeared again, and the case was heard before the referee who, after several litigated hearings, made his report on the 22d June, by which he reported due to the defendant $181·50. Upon this report judgment was perfected on the 3d July for $318·19. On the 6th July defendant issued execution. The defendant had previously assigned his interest in the suit to William Story, and an action was on the 8th July commenced in the name of Story against Lipsey, one of the sureties for the plaintiff on his undertaking given at the commencement of the first suit. Story obtained judgment by default against the defendants in the second suit. Execution was issued and a levy made on the property of Lipsey, who afterwards, about the 1st of September, appeared by attorney and applied to come in and defend. Thereupon the plaintiff by Mr. Brophy, his attorney, consented to vacate the judgment, and served a copy of the complaint upon Lipsey's attorney. No answer having been put in, plaintiff again recovered judgment by default, on the 12th October 1852, and issued execution, under which Lipsey's property is now held by the sheriff of Putnam county.

It becomes necessary now to advert to various little episodes in the history of this interesting controversy.

In July 1851, Brophy assigned, as he alleges, to Story his interest in the first suit, together with the undertaking executed by Lipsey and Hand. In September 1851, Brophy entered up judgment in the same action for his costs, up to and including the trial had in the fall of 1849, the amount being $45·26. This judgment was paid and a satisfaction piece executed by Brophy on the 29th June 1852, a few days before judgment was entered on the report of the referee: Mulligan claims that this payment was understood to be a settlement of the whole controversy. Brophy denies this. The satisfaction piece shows exactly what was settled.

Mulligan agt. Brophy.

On the 13th December 1852, Story was brought before Judge Moore, county judge of Kings county to make discovery of his property at the suit of a judgment creditor, on which occasion he swore that he had never received the assignment from Brophy and had no interest in the claim or judgment.

Upon this state of facts the plaintiff Mulligan, and defendant Lipsey, move to set aside the judgments against them respectively The motion, on the part of Mulligan, is made on the ground of irregularity, although none is specified; and for "fraudulent practice," and on the ground that the payment of the 29th June 1852, was a settlement of the whole controversy. None of these reasons are well founded. It is very possible that the judgment entered in September 1851, was irregular. But the plaintiff has paid it, and can not now set it up as a reason for setting aside the subsequent judgment. The regular practice would have been adopted if the defendant had waited until final judgment, and then included in it his costs of the trial in October 1849. Instead of doing so he entered up a separate judgment for those costs. This can not render the subsequent judgment irregular. The substance of the thing is the same. He now gets in two judgments what he is entitled to in one. This disposes of the first and second objections to this judgment.

In regard to the settlement of the controversy, as sworn to by Mulligan and others, and denied by Brophy, it is obvious that the written evidence of the satisfaction piece, must govern and control. This is fortified also by the circumstances that it is quite improbable that a man having a liquidated claim of upwards of $350, would cancel it on the payment of less than one sixth of the sum. I consider it altogether unsafe to admit parol agreements in relation to canceling judgments and settling suits to prevail in opposition to the oath of the adverse party, except under very special circumstances. It is best to adhere to the written evidence of what took place; and, as a general rule, to *require* written evidence of the settlement of a legal controversy.

The motion on the part of Lipsey seems to be founded upon the disclosures made by Story, tending to show that Story is not the bona fide owner of the undertaking or claim. His application after suffering judgment by default twice, and an execution

to be issued, comes entirely too late. He does not pretend to have any defence upon the merits.

Both motions must therefore be denied with $10 costs in each case.